# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLEAN FUELS ALLIANCE AMERICA, et al., | |
| Plaintiffs, | Civil Action No. 1:24-cv-3572 |
| v. | |
| LEE ZELDIN, Administrator of the U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*Of Counsel:*
HENRY GARGAN
SUSAN STAHLE
U.S. Environmental Protection Agency
Washington, D.C.

ADAM R.F. GUSTAFSON
  *Acting Assistant Attorney General*
  Environment and Natural Resources Division
  United States Department of Justice

KIMERE J. KIMBALL
  *Trial Attorney*
  Environmental Defense Section
  P.O. Box 7611
  Washington, D.C.  20044
  (202) 514-2285
  Kimere.kimball@usdoj.gov

# INTRODUCTION

Plaintiffs failed to comply with the Clean Air Act requirement that parties provide EPA with 60 days' notice of EPA's failure to perform a non-discretionary duty under the Act before filing suit. 42 U.S.C. § 7604(b)(2). Instead, Plaintiffs sent EPA letters months before EPA's statutory deadline to issue regulations for the 2026 renewable fuel volumes under the Renewable Fuel Standard program, asserting EPA *might* miss an upcoming deadline and threatening to sue the agency before the deadlines even passed. Because this type of anticipatory, pre-violation notice is insufficient to satisfy the Clean Air Act's mandatory pre-suit notice requirement, this Court should dismiss this action in its entirety.

# ARGUMENT

**I.     The Clean Air Act Requires Notice of an Actual Violation—Not a Potential Future Violation—of the Act 60 Days Prior to Suit.**

The Clean Air Act authorizes citizens to sue the EPA Administrator when there is a "failure of the Administrator to perform any act or duty under [the Act] which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). The Act then clarifies that "[n]o action may be commenced" under this provision "prior to 60 days after the plaintiff has given notice of such action to the Administrator . . . ." 42 U.S.C. § 7604(a)(2), (b)(2). This provision necessarily authorizes suit only upon the notice of an actual "failure . . . to perform an act or duty" and not, as Plaintiffs argue, merely a potential *future* failure to perform such an act or duty. As fully set forth below, EPA's interpretation is the better interpretation for several reasons.

1.     At the outset, the plain language of the statutory provision, when read as a whole, makes clear that the notice must be of an actual violation. "Courts must give effect to the clear meaning of statutes as written, which includes the broader context of the statute as a whole." *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 349 (D.C. Cir. 2019) (cleaned up). The

"clear[est]" meaning of the statute as a whole requires notice of an actual "failure . . . to perform an act or duty" followed by a 60-day period in which the EPA can cure the violation before a party can sue the agency. 42 U.S.C. § 7604(a)(2), (b)(2).

Plaintiffs argue that they need only give EPA notice of an imminent *lawsuit*, not an agency action. Pl. Opp'n at 10-11. But even if Plaintiffs were correct, that lawsuit must allege an *existing* "failure . . . to perform an act or duty," not a hypothetical future failure to perform an act or duty. 42 U.S.C. § 7604(a)(2). Because no lawsuit could allege an existing failure prior to that failure occurring, the notice of that lawsuit must also allege an existing failure and post-date that failure's occurrence.

Moreover, Plaintiffs' interpretation authorizing pre-failure notice does not comport with the statutory language when read in its entirety. Pl. Opp'n at 10-11. Plaintiffs rely on the fact that a different notice provision under the same statute, § 7604(b)(1), states a party must give notice of a "violation" whereas § 7604(b)(2) uses the word "action." *Id*. Plaintiffs thus argue § 7604(b)(2)'s reference to "action" must mean "civil action" and not "agency action." But Plaintiffs ignore that § 7604(b)(2) also uses the word "violation." The full provision reads:

> No action may be commenced . . . under subsection (a)(2) prior to 60 days after the plaintiff has given notice of such action to the Administrator except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of [certain sections]. . . . .

42 U.S.C. § 7604(b)(2). Reading this provision in full makes clear that the violation—*i.e.*, an already existing "failure . . . to perform an act or duty," *id.* § 7604(a)(2)—must be the subject of *any* notice, and that for certain violations (not at issue here), no 60-day cure period is required.

2.   Additionally, EPA's reading of the statute, unlike Plaintiffs' reading, avoids absurd results and provides a bright light deadline by which EPA must act to comply with the

2

statute and avoid litigation. *Ark. Dairy Coop. Ass'n, Inc. v. Dep't of Agric.*, 573 F.3d 815, 829 (D.C. Cir. 2009) (holding courts should avoid statutory interpretations that lead to "absurd results or would thwart the obvious purpose of the statute." (cleaned up)). This Court has recognized the importance of construing statutes regarding deadlines with bright-line clarity. *See Adams v. SEC*, 287 F.3d 183, 191 (D.C. Cir. 2002) (explaining the importance of "bright-line rule[s]" in statutory interpretations involving filing deadlines). Under EPA's reading of § 7604(b)(2), (1) the agency can only be sued for actually missing a deadline and (2) the agency cannot be sued for missing those deadlines until the deadline passes. Plaintiffs' interpretation would create an entirely different scheme.

First, under Plaintiffs' interpretation, EPA could be sued for merely purportedly "inten[ding]" to miss a deadline rather than actually missing a deadline. Pl. Opp'n at 11. But notably, the statute does not authorize suit for an *intention* to miss a deadline. 42 U.S.C. § 7604(a)(2). The statute only authorizes suit for an actual "*failure* . . . to perform an act or duty . . . ." *Id*. (emphasis added). Plaintiffs attempt to authorize suit on a mere statement about a potential upcoming failure to act neither comports with the terms of the statute nor would result in an administratively feasible rule. Indeed, a potential plaintiff could attempt to conjure an "intent" from any number of statements, none of which are agency actions upon which the agency could be sued under basic tenets of administrative law. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (defining when agency action is sufficiently "final" to be reviewable by courts). Yet under Plaintiffs' interpretation, notice of this mere "intention" would satisfy the notice provision of the Act. Pl. Opp'n at 11.

Second, under Plaintiffs' interpretation, EPA can be sued even before the statutory deadline passes because a potential plaintiff need only wait 60 days after sending EPA notice,

3

which Plaintiffs assert can be served before any existing "failure . . . to perform an act or duty" occurs.  Pl. Opp'n at 11; Dkt. No. 10-2 at 2; Dkt. No. 10-3 at 2.  Indeed, both Plaintiffs letters to EPA expressly threatened to sue EPA as early as September 2023 even though the statutory deadline did not pass until November 2023.  Dkt. No. 10-2 at 2; Dkt. No. 10-3 at 2.   But as discussed in EPA's opening brief, this would authorize suit before the controversy was constitutionally ripe.  *See* Mot. at 6.  Only EPA's reading of the statute creates a bright line rule whereby notice must be provided after an actual "failure . . . to perform an act or duty" occurs and precludes the "absurd result" authorizing unripe suits based on mere "intent[ions]" to fail to act.  *Ark. Dairy Coop. Ass'n, Inc.*, 573 F.3d at 829.

        3.       EPA's reading, not Plaintiffs' reading, best effectuates the purpose of the statutory notice provision to afford an agency the opportunity to cure a violation.  *Sinclair Wyo. Refin. Co. LLC v. EPA*, 101 F.4th 871, 884 (D.C. Cir. 2024) (interpreting Clean Air Act provisions to "comport[] with the statute's purpose").  As both this Court and the Supreme Court have recognized, the purpose of statutory notice provisions like § 7604(b)(2) is to give an agency an "'opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'"  *Friends of Animals v. Ashe*, 808 F.3d 900, 904 (D.C. Cir. 2015) (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989)).

       Only a reading of the statute that requires notice of an actual violation effectuates the purpose of allowing an agency to "bring itself into compliance" because only an agency that is *out* of compliance when the notice is submitted could "bring itself into complete compliance." *Id.*  If the agency is not out of compliance, a notice does not provide an agency with an opportunity to course correct; the notice is simply duplicative of the statutory text itself.

Plaintiffs' theory—that allowing pre-violation notice gives an agency warning and affords it an opportunity to meet the statutory deadline—would render the notice provision a nullity.  Pl. Opp'n at 12-13.  If a plaintiff can provide notice before EPA misses its deadline and sue on the date the deadline passes, the notice provision becomes coterminous with the statutory deadline.  Put differently, Plaintiffs' interpretation would improperly read the notice provision out of the statute entirely.  *Contra Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 477-78 (2017) (explaining courts "give effect, if possible, to every clause and word of a statute" (cleaned up)).

4.   Finally, although Plaintiffs assert their early notice must be sufficient because they claim to have provided EPA with sufficient "specificity" to ascertain the omission at issue, Pl. Opp'n at 1, the language of the specificity requirements further demonstrates that only notice of an already existing act or omission constitutes sufficient notice.  The statute states that "[n]otice under [§ 7604(b)(2)] shall be given in such manner as the Administrator shall prescribe by regulation." 42 U.S.C. § 7604(b)(2).  EPA's notice regulation states that the notice must "describe with reasonable specificity the *action taken or not taken* by the Administrator which is claimed to constitute a failure to perform such act or duty . . . ." 40 C.F.R. § 54.3(a) (emphasis added).  The usage of the past participle of "take" further demonstrates that only notice of an omission that has already occurred can constitute sufficient notice.

As such, the Clean Air Act's notice provision is best read to require that notice be given *after* an agency actually "fail[ed] . . . to perform an act or duty" that could give rise to a lawsuit, and not before any such failure occurs.  42 U.S.C. § 7604(a)(2), (b)(2).

5

## II. Circuit Precedent Precludes Anticipatory Notice.

As fully discussed in EPA's opening brief, the D.C. Circuit has rejected the type of anticipatory notice Plaintiffs' attempt here. *Friends of Animals*, 808 F.3d at 903-05. Explaining that "[t]o state the obvious, [an agency] cannot violate the duty to make a final determination before that duty has come into existence," the D.C. Circuit concluded that pre-violation notice "does not give notice of an *existing* violation of a nondiscretionary duty. Rather, it provides notice only of a possible future violation of a duty that may never arise." *Friends of Animals*, 808 F.3d at 904.

Plaintiffs first attempt to differentiate this precedent by arguing that, unlike the deadline at issue here, the *Friends of Animals* deadline was conditional on an initial determination. Pl. Opp'n at 15. But this distinction is irrelevant here.

Under the Endangered Species Act provision at issue in *Friends of Animals*, a petition to include a species as a listed species triggers two sequential duties, both of which must occur within 12 months of the petition. *Friends of Animals*, 808 F.3d at 902-03. First, the agency must make an initial determination of whether listing the species "may be warranted" within 90 days "to the maximum extent practicable," but no more than 12 months after the petition. *Id*. Second, if the agency determines a listing "*may* be warranted," it must determine whether the listing actually *is* warranted, and it *also* must make that determination within twelve months of the initial petition. *Id*. (emphasis added). Each of these determinations may be the subject of a deadline suit if the plaintiff *separately* complies with the Endangered Species Act's pre-litigation notice provision for each deadline. *Id*. at 903. Like the Clean Air Act notice provision here, a plaintiff must give the agency 60 days' notice before challenging these determinations. *Id*. But the plaintiff must first wait the full 12-month statutory period before submitting its notice of

6

intent to sue for *either* deadline. The Court explained that first, *after 12 months have passed*, a potential plaintiff must give notice of the failure to make an initial determination and wait 60 days to sue on the failure to make that initial determination. *Id*. at 904. Then, after the initial determination is made, a potential plaintiff must submit a new notice and wait an additional 60 days to sue for failure to make a final determination. *Id*.

Additionally, Plaintiffs incorrectly assert the D.C. Circuit left open the question of whether anticipatory notice could meet the notice requirement. Pl. Opp'n at 15-16. Under the framework the Court set forth, the 12-month statutory deadline must pass before the potential plaintiff can submit the notice for even the initial decision. *Friends of Animals*, 808 F.3d at 904. The Court did not suggest that a notice could be submitted for *either* the initial or final decision before the statutorily mandated 12 months had passed. *Id*. at 904-05.

Accordingly, this Circuit's precedent precludes anticipatory notice of the kind Plaintiffs attempt here.[1]

## III.    Plaintiffs Failed to Give Notice of an Actual Violation.

At the time Plaintiffs submitted their notices of intent to sue, EPA's deadline was more than three months away. *See* Dkt. No. 10-2 (Ex. A); Dkt. No. 10-3 (Ex. B). Although Plaintiffs argue that this still constitutes notice of an actual violation because EPA had issued its planned schedule for regulations and would miss its deadline under that announced schedule, thus evincing an "intent" to miss the deadline, Pl. Opp'n at 11, this interpretation misreads the statute. As noted *supra*, the statute does not authorize citizen suits for *intentions* to miss a deadline, only for an actual "failure . . . to perform an act or duty . . . ." 42 U.S.C. § 7604(a)(2). Section

---

[1] Although Plaintiffs also cite to Ninth and First Circuit cases regarding anticipatory notice in other statutes, those cases are irrelevant given this Circuit's precedent.

7604(a)(2) is a waiver of sovereign immunity, which courts must "read . . . narrowly and construe any ambiguities in the statutory language in favor of immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014). Plaintiffs attempt to substantially enlarge the scope of cases which can be brought against EPA to include not only circumstances where EPA actually missed a deadline, but also cases where EPA "announced its intent" to miss a deadline. Pl. Opp'n at 11. This does not comport with the very narrow waiver of sovereign immunity the Clean Air Act sets forth.

**IV.     Plaintiffs Cannot Cure This Jurisdictional Defect Through Post-Filing Actions.**

Finally, Plaintiffs assertion that the Court should simply hold this matter in abeyance while they complete their jurisdictional pre-filing requirements is contrary to law. Pl. Opp'n at 17-18. Because Plaintiffs cannot cure a jurisdictional defect through post-filing actions, this Court must dismiss and close this matter, and Plaintiffs may bring a new action once they have remedied the jurisdictional defects.

Pursuant to the precedent in this circuit, the Clean Air Act's prefiling requirements are jurisdictional. *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 153-54 (D.D.C. 2014) (dismissing Clean Air Act suit for lack of subject matter jurisdiction for failure to comply with the prefiling notice requirements that are "mandatory conditions precedent to commencing suit that may not be avoided") (cleaned up); *N.Y. Pub. Int. Rsch. Grp., Inc. v. Whitman*, 214 F. Supp.2d 1, 4 n.1 (D.D.C. 2002) (same); *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989) (requiring dismissal for failure to satisfy pre-suit notice requirements); 42 U.S.C. § 7604(a)(2), (b)(2).

Plaintiffs have forfeited any argument that these requirements are not jurisdictional by referencing that issue only in a single sentence in a footnote citing out-of-circuit precedent. Pl.

8

Opp'n at 3 n.1.  It has long been the rule in this Circuit that raising an argument solely in a footnote forfeits the argument.  *See, e.g.*, *White v. Four Seasons Hotel and Resorts*, 244 F. Supp. 3d 1, 5 (D.D.C. 2017) (holding the court would "consider[] the issue forfeited" where the plaintiff raised the issue "only in a footnote . . . and never affirmatively argues [it]"); *Huntington v. Dep't of Com.*, 234 F. Supp. 3d 94, 101 (D.D.C. 2017) (holding argument raised "in a brief footnote" to be "forfeited"); *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 126-27 (D.D.C. 2015) (holding issue raised "obliquely" in footnote waived); *see also Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (*en banc*) explaining courts "need not consider cursory arguments made only in a footnote").

Because the prefiling requirements are jurisdictional, this Court lacked jurisdiction at the time this action was filed.  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)); *Nikolaishvili v. Steele*, No. 22-cv-3630, 2024 WL 2294833, at *3 (D.D.C. Feb. 5, 2024) (same).  And "if subject matter jurisdiction does not exist at the outset of the litigation, it cannot automatically be created by factual events that occur after the complaint is filed."  *Landmark Health Sols., LLC v. Not for Profit Hosp. Corp.*, 950 F. Supp. 2d 130, 135 (D.D.C. 2013).

The fact that the Clean Air Act's notice requirements are jurisdictional and cannot be cured post-filing is further evidenced by the language of the statute itself.  The Act states:  "No action may be *commenced*" until the pre-filing notice requirements are met.  42 U.S.C. § 7604(b).  Those requirements thus must be completed *prior* to the filing of a federal court complaint and cannot be cured post-filing.  Thus, although the Court must dismiss Plaintiffs' claims without prejudice because the notice requirements are jurisdictional, *see Kasap v. Folger*

9

*Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) (holding dismissal for lack of subject matter jurisdiction must be without prejudice), Plaintiffs would need to file a new action once they have completed their pre-filing notice requirements.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening memorandum, this action should be dismissed in its entirety without prejudice to Plaintiffs filing a new action once their prefiling notice requirements are complete.

Respectfully submitted,

Dated: March 24, 2025

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources
Division

*Of Counsel:*
HENRY GARGAN
SUSAN STAHLE
U.S. Environmental Protection Agency
Washington, D.C.

/s/ *Kimere J. Kimball*
KIMERE J. KIMBALL
Trial Attorney
Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-2285
Kimere.kimball@usdoj.gov

*Counsel for Defendants*

10

## CERTIFICATE OF SERVICE

    I hereby certify that on March 24, 2025, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

                                      /s/ *Kimere J. Kimball*
                                      KIMERE J. KIMBALL